## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAJI A. ABDULLAH, | No. 4:24-CV-00225 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GREGORY BRIGGS, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

### MARCH 27, 2024

Plaintiff Taji A. Abdullah filed the instant *pro se* Section 1983[1] action,

alleging constitutional violations by Dauphin County Prison officials.  The Court

will dismiss Abdullah's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure

to state a claim for relief but will grant him leave to amend.

## I.      STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se*

prisoner complaints targeting governmental entities, officers, or employees.[2]  One

basis for dismissal at the screening stage is if the complaint "fails to state a claim

upon which relief may be granted[.]"[3]  This language closely tracks Federal Rule

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   *See* 28 U.S.C. § 1915A(a).

[3]   *Id.* § 1915A(b)(1).

of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[4]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[5]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[6]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[7]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[8]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[9]  Second, the court should distinguish well-

---

[4]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[5]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[6]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[7]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[8]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[9]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

pleaded factual allegations—which must be taken as true—from mere legal

conclusions, which "are not entitled to the assumption of truth" and may be

disregarded.[10]  Finally, the court must review the presumed-truthful allegations

"and then determine whether they plausibly give rise to an entitlement to relief."[11]

Deciding plausibility is a "context-specific task that requires the reviewing court to

draw on its judicial experience and common sense."[12]

Because Abdullah proceeds *pro se*, his pleadings are to be liberally

construed and his complaint, "however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers[.]"[13]  This is

particularly true when the *pro se* litigant, like Abdullah, is incarcerated.[14]

## II.   DISCUSSION

Abdullah's complaint is brief and undeveloped.  He alleges that, from

November 2023 to December 2023, Dauphin County Prison officials violated

several of his constitutional rights.[15]  Abdullah first claims that C.O. Rodriguez

"stole" all his legal mail, as ordered by Deputy Warden Lionell Pierre, in

retaliation for unspecified "prison grievances."[16]  Abdullah additionally contends

---

[10]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[11]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[12]   *Iqbal*, 556 U.S. at 681.
[13]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[14]   *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[15]   Doc. 1 at 4.  Abdullah also asserts that prison officials violated the Pennsylvania Constitution, (*see id.* at 5), but such claims are not federal rights for which Abdullah can seek redress under 42 U.S.C. § 1983.
[16]   Doc. 1 at 4.

that Warden Gregory Briggs had Abdullah's writing materials and envelopes

confiscated in retaliation for filing "prison grievances," thereby impeding

Abdullah's "access to the courts."[17]

Abdullah next alleges that he was subjected to "cruel and unusual

punishment" because he was "forced to live in complete darkness for 15 days

straight, during which he had to "eat, urinate, and defecate in utter darkness."[18]  As

Abdullah is a convicted and sentenced prisoner,[19] he appears to be asserting an

Eighth Amendment conditions-of-confinement claim.

Finally, Abdullah asserts that his religious rights were infringed when

inmates were only permitted to access "[B]ibles and Qurans" through electronic

tablets and then, from November 16, 2023, to December 19, 2023, "[a]ll tablets

were confiscated" throughout the prison.[20]

Abdullah names five defendants: Warden Gregory Briggs, Security Major

Roger Lucas, Deputy Warden of Operations Bruce LeValley, Deputy Warden of

"Treatment" LaTonya Ray, and Deputy Warden of Security Lionel Pierre.[21]  He

claims emotional and mental health injuries and seeks monetary damages and the

implementation of unspecified "new policies."[22]

---

[17]   *Id.*
[18]   *Id.*
[19]   *See id.* at 2.
[20]   *Id.* at 4.
[21]   *See id.* at 2-3.
[22]   *See id.* at 5.

Upon review of Abdullah's complaint, he fails to state a claim upon which relief may be granted.  His complaint may also violate Federal Rule of Civil Procedure 20.  The Court will address Abdullah's pleading deficiencies in turn.

### A.      Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[23]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[24]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[25]  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[26]

Abdullah's first pleading deficiency is his failure to allege personal involvement for most Defendants.  Although he names Lucas, LeValley, and Ray

---

[23]   *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[24]   *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[25]   *Id.* (quoting *Rode*, 845 F.2d at 1207).

[26]   *See id.* at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

in the defendant-identification section of the form complaint, he does not include any specific allegations of wrongdoing that would establish personal involvement by these Defendants in the purported constitutional violations.  In other words, Abdullah never pleads what each Defendant did or did not do.  Abdullah, however, must specify each Defendant's personal involvement in the alleged constitutional misconduct in order to state a Section 1983 claim.  Accordingly, the Court must dismiss any Section 1983 claim against Lucas, LeValley, and Ray pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

## B.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[27]  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[28]

---

[27]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[28]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

Abdullah appears to assert a claim of retaliation against Deputy Warden

Pierre and Warden Briggs, alleging that they ordered Abdullah's legal mail to be

stolen and his writing and mailing materials to be confiscated, respectively, in

retaliation for filing "prisoner grievances."[29]  Assuming without deciding that

Abdullah's assertions of theft of legal mail and confiscation of writing materials

are "adverse actions" for First Amendment retaliation, his claims lack causation.

Abdullah does not specify what "prisoner grievances" he is talking about or

the substance or timing of those grievances, nor does he indicate if he filed

grievances that name or implicate any particular Defendant.  Simply claiming that

he filed "grievances" and was then retaliated against does not establish knowledge

of the protected conduct or a retaliatory motive.  It is well settled that causation

cannot be inferred simply by asserting that a plaintiff pursued some protected

activity (like a lawsuit or prison grievance) against a defendant or nonparty prison

official who is not the alleged perpetrator of the retaliatory adverse action.[30]  Such

---

[29]  Doc. 1 at 4.

[30]  *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

general allegations fail to establish or even infer knowledge of the protected

conduct and they likewise fail to show why a defendant would take the alleged

adverse action.

Accordingly, Abdullah's retaliation claims against Pierre and Briggs fall

short because they fail to plausibly plead causation.  Dismissal is required under 28

U.S.C. § 1915A(b)(1).

### C.      First and Fourteenth Amendment Access to Courts

Abdullah also appears to assert an access-to-courts claim against Warden

Briggs.  Under the First and Fourteenth Amendments to the United States

Constitution, "prisoners retain a right of access to the courts."[31]  Inmates, however,

may only proceed on access-to-courts claims in two situations: "challenges (direct

or collateral) to their sentences and conditions of confinement."[32]  To adequately

plead an access-to-courts claim that is backward-looking in nature,[33] the prisoner

must allege "(1) that they suffered an 'actual injury'—that they lost a chance to

pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no

other 'remedy that may be awarded as recompense' for the lost claim other than in

---

[31]   *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[32]   *Id.* (citing *Lewis*, 518 U.S. at 354-55).

[33]   There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

the present denial of access suit."[34]  The underlying claim must be described well

enough to demonstrate that it is "more than hope," and the complaint must set out

the "lost remedy."[35]

Simple recitation of the elements of an access-to-courts claim reveals that

Abdullah's complaint fails at every element.  First, Abdullah's allegations do not

involve an underlying direct or collateral challenge to a criminal sentence or a

conditions-of-confinement lawsuit.  Abdullah, in fact, does not assert that the

alleged confiscation of his legal mail or his writing and mailing materials adversely

affected *any* underlying case—civil or criminal.  Thus, Abdullah has not alleged

that he suffered a cognizable injury, *i.e.*, that he lost the chance to pursue a

nonfrivolous post-conviction challenge or conditions-of-confinement claim.

Additionally, Abdullah has not pled facts showing that he has no other remedy

than a Section 1983 denial-of-access lawsuit.  Thus, because Abdullah's access-to-

courts claim fails at every element, this claim must be dismissed.

### D.    First Amendment Free Exercise Claim

Abdullah appears to raise a First Amendment free exercise claim against

Warden Briggs regarding access to "[B]ibles and Qurans."  He alleges that

Dauphin County Prison does not allow "paper books" and therefore Bibles and

---

[34]   *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).
[35]   *See Christopher*, 536 U.S. at 416-17.

Qurans can only be accessed through the prison's electronic tablets.[36]  He then

claims that, for approximately a month, the tablets were "confiscated throughout

the whole prison."[37]

"Inmates clearly retain protections afforded by the First Amendment, . . .

including its directive that no law shall prohibit the free exercise of religion."[38]

"Nevertheless, the fact of incarceration and the valid penological objectives of

deterrence of crime, rehabilitation of prisoners, and institutional security justify

limitations on the exercise of constitutional rights by inmates."[39]  Only beliefs that

are (1) sincerely held, and (2) religious in nature are entitled to constitutional

protection.[40]  Once a prisoner-plaintiff has established that they have a sincerely

held religious belief, they must demonstrate that the challenged prison practice or

policy (which allegedly infringes on that religious belief) in not reasonably related

to penological interests under the factors set forth in *Turner v. Safley*, 482 U.S. 78

(1987).[41]  The *Turner v. Safley* analysis aims to balance the constitutional rights of

prisoners with the "security, rehabilitation, and administrative concerns" of

prisons.[42]

---

[36]  Doc. 1 at 4.
[37]  *Id.*
[38]  *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).
[39]  *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).
[40]  *See Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *DeHart*, 227 F.3d at 51.
[41]  *See DeHart*, 227 F.3d at 51.
[42]  *See id.*

Here, Abdullah has not plausibly alleged that he holds any religious beliefs, much less that those beliefs are sincerely held.  He also does not allege why the electronic tablets were confiscated and who ordered the confiscation (although it is possible that Abdullah is again targeting Warden Briggs).  Accordingly, Abdullah has failed to plausibly state a First Amendment free exercise claim.

### E.     Unspecified Fourth Amendment Claim

Abdullah cites the Fourth Amendment in his complaint but does not specify how this constitutional right was violated.[43]  It is possible that he is asserting a Fourth Amendment claim for the "seizure" of his legal mail or writing materials. If so, that claim fails.

The Fourth Amendment to the United States Constitution, in pertinent part, protects against "unreasonable searches and seizures."[44]  However, in the prison context, it is well settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells[.]"[45]  Rather, the Fourth Amendment's

---

[43]  *See* Doc. 1 at 5.
[44]  U.S. CONST. amend IV.
[45]  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim) (citing *Hudson*, 468 U.S. at 536).

application to prison settings has been narrowly constrained to issues regarding

bodily integrity.[46]

Abdullah has not, and cannot, state a Fourth Amendment claim.  His

allegations regarding confiscation of his mail and writing materials simply do not

amount to a Fourth Amendment violation in the prison context.  Any Fourth

Amendment claim will be dismissed with prejudice under Section 1915A(b)(1).

### F.      Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . .

which house persons convicted of serious crimes[] cannot be free of discomfort."[47]

Nevertheless, the state cannot subject an inmate to cruel and unusual punishment

or "inhumane treatment," such as deprivation of "identifiable human need[s]" like

"food, clothing, shelter, medical care, and reasonable safety[.]"[48]

To prevail on an Eighth Amendment conditions-of-confinement claim, a

prisoner-plaintiff must plausibly allege both objective and subjective elements.[49]

Objectively, the inmate must demonstrate that "the prison official deprived the

prisoner of the minimal civilized measure of life's necessities," often referred to as

---

[46]  *See Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016) (distinguishing *Hudson*'s holding from Fourth Amendment claims regarding invasive searches of prisoners' bodies).

[47]  *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

[48]  *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

[49]  *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)

a "sufficiently serious" deprivation.[50]  Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[51]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[52]  Deliberate indifference is a high bar and requires a plaintiff to show that the defendant "recklessly disregard[ed] a substantial risk of serious harm."[53]

Abdullah's complaint fails at the second element.  Assuming without deciding that his allegations of being kept in complete darkness for 15 days rise to the level of a sufficiently serious deprivation, Abdullah fails to plead deliberate indifference by any Defendant.  That is, he does not allege that any Defendant was aware (or made aware) of the purportedly unconstitutional conditions of confinement, nor that any Defendant was deliberately indifferent to those conditions.  Abdullah's failure to plausibly allege the second element of an Eighth Amendment conditions-of-confinement claim means that this claim, too, must be dismissed under Section 1915A(b)(1).

---

[50]   *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[51]   *Id.* (citing *Farmer*, 511 U.S. at 834).
[52]   *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[53]   *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citation omitted).

### G.      Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[54]  Abdullah will be granted leave to amend in the event that he can plead facts that would plausibly state a claim for relief.

If Abdullah chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs.  Abdullah must leave one-inch margins on all four sides of his pleading.[55]  He must also name proper defendants and *specify the offending actions or omissions by a particular defendant*.  This step is particularly critical for Abdullah, as his initial complaint is largely devoid of allegations that demonstrate Defendants' personal involvement in the purportedly unconstitutional conduct. Abdullah must also indicate what constitutional provision is allegedly violated by Defendants' conduct such that the Court can ascertain what type of Section 1983 claim or claims he is raising.  Abdullah must sign the amended complaint and indicate the nature of the relief sought.

---

[54]    *Grayson*, 293 F.3d at 114.
[55]    *See* LOCAL RULE OF COURT 5.1

14

Abdullah is also admonished that he must comply with Federal Rule of Civil Procedure 20(a)(2) if he intends to join multiple defendants in this action. That rule requires that, to join multiple defendants in one lawsuit, the events alleged must be part of the "same transaction, occurrence, or series of transactions or occurrences," or there must be a "question of law or fact common to all defendants."[56] Most of Abdullah's Section 1983 claims do not appear to be related, and his failure to plead personal involvement for many Defendants creates potential Rule 20 joinder issues. Abdullah must correct these deficiencies in his amended complaint. If Abdullah does not timely file an amended complaint, dismissal of his Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## III.  CONCLUSION

Based on the foregoing, the Court will dismiss Abdullah's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. Abdullah may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[56]  *See* FED. R. CIV. P. 20(a)(2)(B).