IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAJI A. ABDULLAH, JR., | No. 4:24-CV-00225 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GREGORY BRIGGS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JUNE 10, 2024

Plaintiff Taji A. Abdullah, Jr., filed the instant *pro se* Section 1983[1] action in February 2024, alleging constitutional violations by Dauphin County Prison officials. The Court dismissed Abdullah's initial complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief but granted him leave to amend. Presently before the Court is Abdullah's amended complaint for screening under Section 1915A(a).

I.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[2] One

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] *See* 28 U.S.C. § 1915A(a).

basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[3] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[4]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[5] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[6] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[7]

---

[3]  *Id.* § 1915A(b)(1).
[4]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[5]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[6]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[7]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[8] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[9] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[10] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[11] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

Because Abdullah proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[13] This is particularly true when the *pro se* litigant, like Abdullah, is incarcerated.[14]

## II.     DISCUSSION

Abdullah's amended complaint is lengthy and repetitive. Learning that he had failed to plead personal involvement for most of the defendants in his initial

---

[8] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[9] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[10] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[11] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[12] *Iqbal*, 556 U.S. at 681.
[13] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[14] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

pleading, he now attempts to lodge identical allegations against every named Defendant. Abdullah's copy-and-paste approach, however, fails to cure many of the pleading deficiencies identified in this Court's March 27, 2024 Memorandum.

As in his original complaint, Abdullah alleges that, from approximately November 2023 to December 2023, Dauphin County Prison officials violated his constitutional rights in multiple ways.[15] His amended complaint is a laundry list of legal conclusions that attempts to implicate numerous constitutional provisions simply by invoking their short-hand names (*e.g.*, due process, free speech, free exercise, cruel and unusual punishment, equal protection, *etc.*) but without pleading facts that would plausibly state the elements of these claims.

He first alleges that prison officials "stole" his legal mail and filings in retaliation for unspecified "prior grievances" and a prior lawsuit.[16] He additionally contends that prison officials had his writing materials and envelopes confiscated in retaliation for filing prior grievances and a lawsuit, thereby impeding Abdullah's "access to the courts."[17] Abdullah also alleges that he was subjected to "cruel and unusual punishment" because "all electricity was disconnected in the RHU" for 15 days and he was forced to "eat, urinate, and relieve stool in complete darkness."[18]

---

[15]  *See generally* Doc. 10.
[16]  *See, e.g.*, *id.* at 2, 3, 6, 15, 16, 37. Because Abdullah essentially copies and pastes his allegations against the various Defendants, the Court will cite selectively to portions of his amended complaint for examples of his claims.
[17]  *See, e.g.*, *id.* at 2-3, 10.
[18]  *See, e.g.*, *id.* at 3, 10.

He additionally claims that he was denied basic necessities during this time, including "toilet paper, soap, toothpaste, cleaning supplies," deodorant, and heat.[19] Finally, Abdullah asserts that he was denied access to his electronic tablet "for a substantial period" and was unable to access "religious material" during this time.[20]

As noted above, Abdullah references a plethora of constitutional torts, often commingling and confusing his claims.[21] As best the Court can discern, he is attempting to assert the following Section 1983 claims: (1) First Amendment retaliation; (2) First and Fourteenth Amendment access to the courts; (3) Eighth Amendment conditions of confinement; (4) First Amendment free exercise; and (5) Section 1983 conspiracy.[22]

Abdullah identifies four defendants: Warden Gregory Briggs, Deputy Warden of Security Lionel Pierre, Deputy Warden of Operations Bruce LeValley, and Security Major Roger Lucas. He claims emotional and mental health injuries

---

[19] *See, e.g.*, *id.*
[20] *See, e.g.*, Doc. 10 at 4, 14.
[21] For example, Abdullah alleges that the actions of Defendants "violated [his] . . . First (1st) Amendment Rights to Religious Freedom and Access-To-The-Courts . . . in an attempt to retaliate result[ing] in Constitutional violations." *Id.* at 40.
[22] Abdullah also cursorily references substantive due process, access to the press, equal protection, and the Sixth Amendment. *See id.* at 44-45. However, these "claims" are completely undeveloped legal conclusions, have no grounding in the facts alleged, and therefore will not be addressed. *See Connelly*, 809 F.3d at 787. Moreover, to the extent that Abdullah is attempting to assert a substantive due process claim based on the other constitutional violations alleged in the amended complaint, (*see* Doc. 10 at 45), such a claim is barred by the more-specific-provision rule. *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447-48 (3d Cir. 2020).

and seeks compensatory and punitive damages.[23]  Upon review of Abdullah's amended complaint, he again fails to state a claim for relief as to most of the alleged constitutional torts and Defendants.  The Court will address Abdullah's pleading deficiencies in turn.

### A.     First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[24]  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[25]

Abdullah appears to assert a claim of retaliation against all Defendants, alleging that his legal mail and filings were stolen, his writing and mailing materials were confiscated, and his electronic tablet was removed for a period of

---

[23] *See, e.g.*, Doc. 10 at 4, 10, 46.
[24] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[25] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

time in retaliation for filing an unspecified lawsuit and prisoner grievances. Assuming without deciding that Abdullah's assertions of theft of legal documents and confiscation of writing and mailing materials are "adverse actions" for First Amendment retaliation, his retaliation claims in his amended complaint—like those in his original complaint—lack causation.

Abdullah does not specify what "prisoner grievances" he is talking about or the substance or timing of those grievances, nor does he indicate if he filed grievances that name or implicate any particular Defendant. Simply claiming that he filed "grievances" and was then retaliated against at some point in the future does not establish knowledge of the protected conduct or a retaliatory motive. The same reasoning applies to the alleged prior civil lawsuit.[26] It is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.[27] Such general allegations fail to establish or even infer knowledge of the

---

[26] Abdullah does not identify this prior lawsuit by providing a case name, case number, or court in which it was filed. The only other civil lawsuit filed by Abdullah that this Court is aware of is *Abdullah v. Briggs*, 4:24-cv-00223 (M.D. Pa.). That lawsuit, however, was lodged on February 6, 2024, long after the alleged retaliatory actions in the instant lawsuit. *See generally id.*, Doc. 1.

[27] *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec.

protected conduct and they likewise fail to show why a defendant would take the alleged adverse action.

Accordingly, Abdullah's First Amendment retaliation claims once again fall short because he fails to plausibly plead causation. Dismissal is required under 28 U.S.C. § 1915A(b)(1).

### B.      First and Fourteenth Amendment Access to Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[28] Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[29] To adequately plead an access-to-courts claim that is backward-looking in nature,[30] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in

---

17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

[28]   *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[29]   *Id.* (citing *Lewis*, 518 U.S. at 354-55).

[30]   There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

the present denial of access suit."[31] The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[32]

Abdullah alleges that the confiscation of his legal and mailing materials as well as his electronic tablet (which provided law library access) interfered with his pending criminal cases and an unspecified "civil action." He asserts that he has been "severely handicapped [in] defending his two (2) criminal dockets and has been found [g]uilty of the charges" in one criminal case.[33]

Abdullah's access-to-courts claim again fails for multiple reasons. First, he has not alleged that he suffered a cognizable injury, *i.e.*, that he lost the chance to pursue a nonfrivolous post-conviction challenge or a civil rights claim. As for his criminal matters, he asserts only that he was "severely handicapped" during one of his prosecutions. Notably, Abdullah does not allege that he was representing himself in that case such that denial of access to legal materials (like discovery and legal research) could materially affect his criminal case.[34] He also does not

---

[31] *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).
[32] *See Christopher*, 536 U.S. at 416-17.
[33] Doc. 10 at 13.
[34] The public criminal docket indicates that, for both criminal cases to which Abdullah is possibly referring, he was (and is) represented by a public defender. *See generally Commonwealth v. Abdullah*, No. CP-22-CR-000333-2022 (Pa. Ct. Com. Pl. Dauphin Cnty.) (active); *Commonwealth v. Abdullah*, No. CP-22-CR-0001043-2021 (Pa. Ct. Com. Pl. Dauphin Cnty.) (closed). The Court additionally observes that, in case number CP-22-CR-0001043-2021, Abdullah was tried and convicted on November 1, 2023, *before* any of the incidents alleged in the instant lawsuit occurred. *See Abdullah*, No. CP-22-CR-0001043-2021.

plausibly plead how the confiscation of his legal materials or the electronic tablet affected the verdict or any other specific facet of his trial and conviction.

Furthermore, Abdullah does not assert that he lost the chance to pursue a civil conditions of confinement claim; he merely contends that his "ability to meaningfully litigate" an unspecified civil action was affected.[35] Initially, the Court notes that Abdullah's failure to even identify the underlying civil action is fatal to his access-to-courts claim. He does not include a case name, docket number, or court such that he has "describe[d] the underlying claim well enough to show that it is more than mere hope."[36] It is possible that Abdullah is referencing his other civil case filed in this Court: case number 4:24-cv-00223.[37] If so, his access-to-courts claim is plainly meritless because that other case is still ongoing.

Second, Abdullah has not pled facts showing that he has no other remedy than a Section 1983 denial-of-access lawsuit. He does not allege that he cannot assert an appeal or post-conviction claim in his criminal prosecution. Nor does he allege that his other civil case in this Court (if this is indeed the lawsuit to which he is referring) has been dismissed or otherwise ended. Thus, because Abdullah's

---

[35] *See, e.g.*, Doc. 10 at 17.
[36] *See Rivera v. Monko*, 37 F.4th 909, 916 (3d Cir. 2022) (quoting *Monroe*, 536 F.3d at 205-06).
[37] *See* Doc. 10 at 37 (describing other civil action as seeking redress "for personal injuries [he] sustained as a result of mismanaged Prison equipment"). In case number 4:24-cv-00223, Abdullah alleges that, while housed at Dauphin County Prison, "the top bunk detached from the wall and collapsed under [his] cellmate[']s weight," knocking him unconscious. *See Abdullah v. Briggs*, No. 4:24-cv-00223, Doc. 1 at 4 (M.D. Pa. Feb. 6, 2024).

10

access-to-courts claim again suffers from multiple material pleading deficiencies, it must be dismissed.

### C. Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[38] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, clothing, shelter, medical care, and reasonable safety[.]"[39]

To prevail on an Eighth Amendment conditions-of-confinement claim, a prisoner-plaintiff must plausibly allege both objective and subjective elements.[40] Objectively, the inmate must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[41] "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they [were] 'incarcerated under conditions posing a substantial risk of serious harm.'"[42]

---

[38] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).
[39] *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).
[40] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)
[41] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[42] *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2023) (quoting *Farmer*, 511 U.S. at 834).

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[43] Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[44] Deliberate indifference is a high bar and requires a plaintiff to show that the defendant "recklessly disregard[ed] a substantial risk of serious harm."[45]

It appears that Abdullah is attempting to assert a conditions-of-confinement claim against all four Defendants. His allegations regarding being kept in complete darkness for 15 days in December without electricity, heat, toothpaste, deodorant, soap, or toilet paper plausibly state a sufficiently serious deprivation of life's necessities.

Abdullah, however, fails to plead personal involvement[46] or deliberate indifference by most Defendants. He first alleges that Warden Briggs ordered the electricity and heat to be turned off and Abdullah's hygiene products confiscated, thus creating the conditions complained of.[47] This is sufficient to establish

---

[43] *Chavarriaga*, 806 F.3d at 226 (citing *Farmer*, 511 U.S. at 834).
[44] *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[45] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citation omitted).
[46] To state a Section 1983 claim, a plaintiff must allege personal involvement in the unconstitutional conduct by each defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).
[47] *See* Doc. 10 at 10.

personal involvement by Briggs in the purportedly unlawful conduct and deliberate indifference to Abdullah's health or safety.

Abdullah's allegations against the other Defendants, however, fail to plausibly establish personal involvement in the conditions of confinement or deliberate indifference to his health and safety. For example, Abdullah—employing his copy-and-paste methodology—asserts that he suffered from the alleged conditions "[a]s a result of Lionel Pierre's conduct."[48] This vague and conclusory allegation fails to plausibly state personal involvement in the unlawful conduct, let alone deliberate indifference to Abdullah's health or safety. Deliberate indifference requires that the "prison official *must both know of and disregard* an excessive risk to inmate health or safety."[49] Abdullah's allegations are purely conclusory and do not demonstrate deliberate indifference.

Abdullah includes identical conclusory assertions with respect to Deputy Warden LeValley and Security Major Lucas. As to both Defendants, he merely alleges that the conditions of confinement were a "result of [Defendant]'s conduct" or actions.[50] Such vague and conclusory allegations do not suffice to state personal involvement or deliberate indifference.

---

[48] *Id.* at 14. Abdullah also alleges that Pierre, LeValley, and Lucas "orchestrated" certain events "via a conspiracy with other staff members." *See, e.g.*, *id.* at 20, 30. Abdullah's conspiracy claim will be addressed separately below.

[49] *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (emphasis added) (citation omitted).

[50] *See id.* at 24 (LeValley); *id.* at 34 (Lucas).

13

Abdullah's failure to plausibly allege the second element of a conditions-of-confinement claim means that this claim must be dismissed as to Pierre, LeValley, and Lucas pursuant to 28 U.S.C. § 1915A(b)(1). This Eighth Amendment claim can proceed against Briggs.

### D. First Amendment Free Exercise Claim

Abdullah appears to raise a First Amendment free exercise claim with respect to the confiscation of his electronic tablet. He claims that his tablet was taken away "for a substantial period" and that these tablets are the only source of "[r]eligious material access."[51] Abdullah states that he is a Muslim, and that losing access to the tablet infringed his First Amendment rights.[52]

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion."[53] "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates."[54] Only beliefs that are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection.[55] Once a prisoner-plaintiff has established that they have a sincerely

---

[51] Doc. 10 at 19.
[52] *See id.*
[53] *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).
[54] *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).
[55] *See Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *DeHart*, 227 F.3d at 51.

held religious belief, they must demonstrate that the challenged prison practice or policy (which allegedly infringes on that religious belief) in not reasonably related to penological interests under the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987).[56] The *Turner v. Safley* analysis aims to balance the constitutional rights of prisoners with the "security, rehabilitation, and administrative concerns" of prisons.[57]

Abdullah alleges that he is a Muslim, and it is assumed at the screening stage that he sincerely holds these religious beliefs. He also asserts that his electronic tablet—the only source of access to religious materials—was confiscated for a "substantial period" under direct orders from Warden Briggs in retaliation for protected First Amendment conduct. These allegations are sufficient to state a free expression violation against Briggs.

Be that as it may, it is immediately apparent that Abdullah's free expression claim suffers from the same personal involvement deficiency as his Eighth Amendment claim. That is, although he plausibly alleges personal involvement in the First Amendment violation by Briggs, he does not do so for Pierre, LeValley, or Lucas. Instead, Abdullah includes only vague and conclusory claims that the "conduct" or "actions" of these latter Defendants violated his First Amendment

---

[56] *See DeHart*, 227 F.3d at 51.
[57] *See id.*

free expression rights, without explaining what that conduct was.[58]  Therefore, Abdullah's free expression claim may proceed against Briggs only.

### E. Section 1983 Conspiracy

To state a claim for Section 1983 conspiracy, a plaintiff must plausibly allege: "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'"[59]  Notably, to state a conspiracy claim, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."[60]

---

[58]  *See* Doc. 10 at 14, 24, 29, 34, 40.  It appears that the actual seizure of the tablet was performed by an "unknown" corrections officer.  *See, e.g.*, *id.* at 8, 18.

[59]  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (alterations in original) (quoting *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[60]  *See id.* at 295 (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941)))); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that plaintiff's "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

16

Abdullah's Section 1983 conspiracy claim is plainly deficient. He repeatedly states, in conclusory fashion, that Defendants "entered into a conspiracy" to deprive him of his constitutional rights or that they "orchestrated" a conspiracy.[61] Such talismanic phrases do not suffice to plausibly plead a civil rights conspiracy. Moreover, these are the exact type of conclusory allegations that violate the pleading requirements provided in *Twombly* and *Iqbal*. Such formulaic, purely legal conclusions must be disregarded.[62] Accordingly, Abdullah's Section 1983 conspiracy claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### F.  Official Capacity Claims

Abdullah appears to sue all Defendants in their individual and official capacities.[63] Suing Defendants in their official capacities is akin to suing the municipality—Dauphin County—itself.[64] To assert a Section 1983 claim against Dauphin County by way of an official capacity claim against a county employee, Abdullah must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury.[65] He must also plausibly plead facts showing

---

[61]  *See, e.g.*, Doc. 10 at 44.
[62]  *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).
[63]  Doc. 10 at 43.
[64]  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).
[65]  *Id.* at 690-91.

that each Defendant is a decisionmaker endowed with authority to promulgate or establish an official custom or policy.[66]

Nowhere in his amended complaint does Abdullah identify a policy or custom fairly attributable to Dauphin County. Thus, his official capacity claims must be dismissed.

### G. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[67] Further leave to amend will be denied because Abdullah has failed to cure numerous deficiencies with his pleadings even after "amendments previously allowed."[68]

This case, consequently, will continue as to the following Section 1983 claims: (1) an individual capacity Eighth Amendment conditions-of-confinement claim against Warden Briggs; and (2) an individual capacity First Amendment free expression claim against Warden Briggs.

---

[66] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's *authorized decisionmakers*" represents an act of official government policy (emphasis added)); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).
[67] *Grayson*, 293 F.3d at 114.
[68] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

## III. CONCLUSION

Based on the foregoing, the Court will dismiss much of Abdullah's amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. This case will proceed only as to Abdullah's Section 1983 claims against Warden Briggs regarding alleged unconstitutional conditions of confinement and infringement of free expression. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge